| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | ) | |
| SALLY CHRISTINE SUMMERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:09-cv-277 |
| | ) | |
| LHC GROUP, INC., | ) | Judge Thomas A. Wiseman, Jr. |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the Court is defendant LHC Group, Inc.'s Motion to Dismiss Complaint and for Attorneys'

Fees (Doc. No. 7). The relator, Sally Christine Summers, has filed a response in opposition to the motion

(Doc. No. 15), and the United States has filed its "Statement of Interest in Response to Defendant's

Motion to Dismiss" (Doc. No. 29). Defendant LHC has filed a reply brief addressing certain arguments

raised in Summers' response (Doc. No. 35). The defendant's motion is now ripe for consideration.

As a result of the relator's failure to file the Complaint *in camera* and under seal as required by 31

U.S.C. § 3730(b)(2), as discussed in greater detail below, the motion to dismiss will be granted and this

matter dismissed with prejudice as to relator Sally Christine Summers, but without prejudice to the United

States' ability to pursue the same or related claims against LHC should it choose to do so. An

appropriate Order entering dismissing Summers' claims will be entered. The request for attorneys' fees

will be denied for the reasons set forth herein.

## I.     PROCEDURAL BACKGROUND

Relator Sally Christine Summers initiated this *qui tam*[1] action under the False Claims Act ("FCA"),

31 U.S.C. § 3729 *et seq.*, with the filing of her Complaint on March 20, 2009. The Complaint essentially

alleges that Summers was terminated from her employment with defendant LHC after she complained to

management that the defendant was submitting false claims for payment under the Medicare Program.

Contrary to express procedural requirements set forth in the FCA, the Complaint was not filed *in camera*

---

[1] *Qui tam* is short for "qui tam pro domino rege quam pro se imposo sequitur," which means he "who brings the action for the king as for himself." *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 746 n.3 (9th Cir. 1993) (citation omitted).

or under seal, nor was it accompanied by a motion that it be filed under seal.  31 U.S.C. § 3730(b)(2).[2] The relator's counsel, in fact, appears to have been completely unaware of the requirements of § 3730(b)(2) at the time the Complaint was filed.  In an affidavit submitted in support of Summers' response in opposition to the motion to dismiss, counsel for Summers asserts that "shortly after" the complaint was filed, he was contacted by an employee of the Clerk's Office who called him to discuss "whether the Complaint should be placed under seal and the procedure to be used."  (Doc. No. 17, at ¶ 3.)  Apparently no decision was reached during this conversation but the Clerk's Office employee told counsel she would call him back.  Counsel then left the office on other business, returning three days later, on Monday, March 23.  At that point he picked up a telephone message from the Clerk's Office employee suggesting he send her an e-mail requesting that she place the case under seal.  Counsel called the Clerk's Office to ascertain the correct e-mail address, and was told at that time by a different employee that an e-mail would not suffice; instead, he needed to file a motion to seal the case.  Counsel prepared to file the motion on Tuesday, March 24, 2009 but was "surprised" at that point to learn the case had already been posted through CM/ECF on line; he allegedly believed that "no action would be taken until [he] filed the motion to seal."  (Doc. No. 17, at ¶ 7.)

After receiving a call from an Assistant U.S. Attorney on March 26 notifying him that his office had picked up the case on PACER, counsel decided to go ahead and file the motion to seal, which he did on March 27, 2009, a full week after filing the Complaint.  The motion states, in total:  "Comes the Plaintiff and request [sic] that this Complaint be sealed until such time as the United States determines whether or not it will enter this case."  (Doc. No. 4, at 1.)  Magistrate Judge Knowles promptly denied the motion on the grounds that it was not accompanied by a memorandum of law and provided no basis for granting it. (Doc. No. 5.)

Defendant LHC filed its motion to dismiss on April 15, 2009, asserting that the Complaint should be dismissed with prejudice as to Summers on the grounds that she failed to comply with the mandatory filing requirements set forth in 31 U.S.C. § 3730(b)(2).  Alternatively, LHC asserts that dismissal is warranted on the grounds that Summers failed to plead fraud with particularity as required by Rule 9(b) of

---

[2] Summers satisfied the other statutory requirements of § 3730(b)(2) by serving initial disclosures on the United States and not initially serving the Complaint upon the defendant.  Because the Complaint was not sealed, however, the defendant obviously became aware of it in fairly short order.

the Federal Rules of Civil Procedure, and that LHC is entitled to attorneys' fees on the basis that the Complaint is "clearly frivolous, vexatious, and designed for harassment." (Doc. No. 7, at 1.)

Contemporaneously with her response in opposition to LHC's motion and an accompanying memorandum (Doc. Nos. 15 and 16), Summers filed a Motion to Amend Complaint (Doc. No. 13) and a proposed Amended Complaint (erroneously filed as a separate docket entry, Doc. No. 14, rather than as an attachment to the Motion to Amend), which she asserts cures the purported pleading deficiencies by including additional details regarding the allegedly fraudulent behavior. That proposed Amended Complaint was not filed under seal either. A Substituted Amended Complaint was filed on April 23 (Doc. No. 22), likewise unsealed and without the Court's permission.

The United States thereafter filed its Statement of Interest (Doc. No. 29) in which it takes no formal position on LHC's motion, but does assert that any dismissal of the action should be without prejudice as to the United States.

## II.    DISCUSSION

### A.    The FCA's Procedural Requirements

The FCA imposes civil liability upon "[a]ny person" who, among other things, "knowingly presents, or causes to be presented to . . . the United States . . . a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a). The United States may initiate an FCA action on its own, *id.* § 3730(a), or alternatively through the *qui tam* provisions of the Act which permit private citizens, referenced as "relators," to bring actions on behalf of the United States. The FCA specifically mandates that *qui tam* complaints must be filed initially under seal, *in camera*, and served upon the Attorney General and the United States, but not on the defendants. *Id.* § 3730(b)(2).[3] The Attorney General then has sixty days, subject to extension, to investigate the allegations and determine whether to intervene and take over the suit. *Id.* § 3730(b)(2)–(3). If the United States declines to intervene and take over the *qui tam* action, "the person bringing the action shall have the right to conduct the action." *Id.* § 3730(b)(4)(B). The complaint

---

[3] That provision states in full:

A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure [now Fed. R. Civ. P. 4(i)]. *The complaint shall be filed* in camera, *shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders.* The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

31 U.S.C.A. § 3730(b)(2) (emphasis added).

is not to be unsealed and served upon the defendant until the "court so orders." *Id.* § 3730(b)(2).

LHC argues that this matter must be dismissed as a result of Summers' failure to comply with § 3730(b)(2), either because filing under seal in accordance with the statute is a jurisdictional prerequisite to maintaining a *qui tam* action under the FCA or on the grounds that the failure to comply with the procedural requirements of § 3730(b)(2) "incurably frustrated" the congressional purposes underlying the statute. The defendant relies primarily upon the analysis employed in *United States ex rel. Fellhoelter v. Valley Milk Products, L.L.C.*, No. 3:05-CV-343, 2008 WL 217116 (E.D. Tenn. Jan. 24, 2008); *United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995 (2d Cir. 1995); and *Erickson ex rel. United States v. American Inst. of Bio. Sciences*, 716 F. Supp. 908 (E.D. Va. 1989).

Summers first argues, in response, that the statute permits dismissal "only if the Court and the Attorney General give written consent to the dismissal for their reasons for consenting." (Doc. No. 16, quoting 31 U.S.C. § 3730(b)(1). That argument is utterly without merit. As the United States points out, the provision cited applies only where the *relator* seeks a voluntary dismissal, not when the court orders dismissal on legal grounds. *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 344 (6th Cir. 2000).

Alternatively, Summers argues that this Court should adopt the balancing test promulgated by the Ninth Circuit in *United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 245 (9th Cir. 1995), and deny the defendant's motion on the grounds that the procedural deficiencies have not been shown to have prejudiced the government or to have resulted from the relator's bad faith.

In sum, the question before this Court is whether the Ninth Circuit's balancing test applies in this context, or whether the procedural deficiency *per se* requires dismissal of the action.

**B.** **_United States ex rel. Lujan v. Hughes Aircraft Co._ Is Inapplicable in the Context Presented.**

In 1995, the Ninth Circuit held that the § 3730(b)(2) seal requirements "are not jurisdictional, and violation of those requirements does not *per se* require dismissal of the *qui tam* complaint." *United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 245 (9th Cir. 1995). In that case, however, the relator had properly filed the complaint under seal and *in camera* when she instigated suit, but she had violated the seal provisions of the FCA by making statements to a major newspaper about the existence and nature of her *qui tam* suit while it was still under seal. *Id.* at 244. The defendant brought a motion to

dismiss the action as a sanction for the relator's violation of 31 U.S.C. § 3730(b)(2). The district court granted the motion and the Ninth Circuit reversed, noting first that "[n]o provision of the False Claims Act explicitly authorizes dismissal as a sanction for disclosures in violation of the seal requirement," and that by enacting the seal provision, Congress had "intended to strike a balance between 'the purposes of *qui tam* actions [and] . . . law enforcement needs[.]' " *Lujan*, 67 F.3d at 245 (quoting S. Rep. No. 345, 99th Cong., 2d Sess. 24, reprinted in 1986 U.S.C.C.A.N. 5266, 5289) (alteration in original). The Ninth Circuit went on to hold that courts must take this balance into consideration "when constructing a sanction for a violation of the seal provision." *Id.* The court also enumerated the factors to be weighed in conducting that analysis, including: (1) whether the government was actually harmed by the violation; (2) the nature and relative severity of the violation; and (3) the presence or absence of bad faith or willfulness. *Id.* at 245–46.

The factual context of *Lujan* is distinguishable from that of the case at bar, however, insofar as *Lujan* involved a *post-filing* violation of the seal requirement. The Ninth Circuit itself recognized that the violation there was "qualitatively different than the violations in cases that have found dismissal was an appropriate sanction." *Id.* at 246 (referencing *Erickson ex rel. United States v. Am. Inst. of Bio. Scis.*, 716 F. Supp. 908 (E.D. Va. 1989), and *United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995 (2d Cir. 1995)). This Court finds that application of *Lujan*'s balancing test would be inappropriate in the present context, particularly given that the requisite seal was never in place, as a result of which there is no basis for determining as a factual matter whether the United States has been "actually harmed" by the violation. Moreover, the severity of the "violation" and the presence of bad faith or willfulness are not particularly relevant where there was no seal in place to violate. The Court therefore looks instead for guidance from cases factually analogous to the one at bar, nearly all of which have similarly held that *Lujan*'s balancing test is inappropriate and that dismissal is warranted. [4]

---

[4] In her response to the defendant's motion, Summers cites *United States v. Fiske*, 968 F. Supp. 1347 (E.D. Ark. 1997), as an example of a case factually similar to the one at bar in which the district court applied the *Lujan* balancing test to conclude that dismissal was not warranted. That court did not expressly rely on *Lujan*, though it referenced the absence of bad faith on the part of the filer and the Government's failure to show injury. Rather, the court noted that it would not, "in light of the Government's waiver of this issue, go on to determine whether the violations of the filing requirements of § 3730(b)(2) were sufficiently egregious to independently warrant dismissal." *Id.* at 1352. To the extent *Fiske* intended to incorporate *Lujan*'s balancing test in situations such as this one where the relator failed to file the initial complaint under seal, this Court finds it to be unpersuasive.

**C.    The Procedural Deficiencies Mandate Dismissal of the Action with Prejudice as to the Relator.**

In a widely cited district court decision that predates *Lujan* by some years, the relator failed to file his *qui tam* complaint *in camera* and failed to await a court order before serving the defendant.  The court granted the defendant's motion to dismiss on the ground that the relator had failed to comply with the *qui tam* statute's mandatory filing and service requirements.  *Erickson ex rel. United States v. American Inst. of Biological Scis.*, 716 F. Supp. 908, 910 (E.D. Va. 1989).  The primary basis for the court's decision was that "a party pursuing a statutory remedy must comply with all the procedures the statute mandates."  *Id.* at 911 (citing *United States ex rel. Tex. Portland Cement Co. v. McCord*, 233 U.S. 157, 162 (1913); *Reich v. Dow Badische Co.*, 575 F.2d 363 (2d Cir.), *cert. denied*, 439 U.S. 1006 (1978)).  The court also noted that "[s]ound policy also supports dismissal" insofar as the relator's failure to comply with the statutory procedural provisions "irreversibly frustrate[d] the congressional goals underlying those provisions," including the goals of (1) "allow[ing] the government first to ascertain in private whether it was already investigating the claims stated in the suit and then to consider whether it wished to intervene"; (2) "prevent[ing] alleged wrongdoers from being tipped off that they were under investigation"; and (3) "rectify[ing] a statutory anomaly 'under which the defendant may be forced to answer the complaint two days after being served, without knowing whether his opponent will be a private litigant or the Federal government.' "  *Id.* at 912 (citing S. Rep. No. 345, 99th Cong., 2d Sess., 24, reprinted in 1986 U.S.C.C.A.N. 5266, 5289).

Several years after *Erickson* but just before *Lujan* was issued, the Second Circuit was presented with a situation in which the relators had failed to comply with *any* of the seal provisions in the statute: They did not file the complaint under seal or *in camera*; they did not serve the United States with a copy of the complaint and other material evidence and information in their possession; and, within hours of filing their complaint, they arranged for an interview with a local reporter which resulted in a newspaper article published two days later, revealing the substance of the complaint, the fact of prior discussions with government officials about their allegations, as well as other disclosures.  *United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 997 (2d Cir. 1995).  Upon review of the defendant's motion to dismiss the complaint with prejudice, the Second Circuit held that the relators' failure to comply with the statutory requirements "incurably frustrated" all the interests protected by the statute—those addressed in

the legislative history of the Act as well as others that were not—and that, consequently, dismissal of the complaint with prejudice was required.[5]

Secondarily, the Second Circuit found that dismissal with prejudice was "supported not only by policy considerations . . . but also by pertinent authority," namely *McCord, Reich* as well as *Erickson. Id.* at 999 (quoting *McCord*, 233 U.S. at 162–63 (as holding that when a statute "creates a new liability and gives a special remedy for it, . . . the limitations upon such liability become a part of the right conferred, and compliance with them is made essential to the assertion and benefit of the liability itself"); *Reich*, 575 F.2d at 367–70 (as standing for the principle that failure to comply with statutory procedural requirements attendant to bringing complaint alleging age discrimination warrants grant of summary judgment in favor of defendants absent circumstances that might excuse failure); and *Erickson*, 716 F. Supp. at 912). The court expressly declined to consider whether the relators' "failure to comply with the procedural requirements of § 3730(b)(2) [posed] a question of subject matter jurisdiction," *id.* at 999 n.4.[6]

The Sixth Circuit has not directly addressed the question of whether the seal requirements of § 3730(b)(2) are jurisdictional or whether failure to comply with them upon the initial filing of a lawsuit must always result in dismissal. However, in a cursory opinion referencing *Pilon* about a year after its issuance, the Sixth Circuit affirmed the district court's summary judgment in favor of the defendant on the basis that the relator had ignored the FCA's filing requirements. *See Hackett v. Martin Marietta Corp.*, No. 95-6494, 1996 WL 577628, at *1 (6th Cir. Oct. 7, 1996) ("Summary judgment was also proper on the claim under the False Claims Act, as [plaintiff] complied with none of the requirements for filing a *qui tam* claim." (citing *Pilon*, 60 F.3d at 997–1000)).

The only district court within the Sixth Circuit to consider the issue, *United States ex rel. Fellhoelter v. Valley Milk Products, L.L.C.*, No. 3:05-CV-343, 2008 WL 217116 (E.D. Tenn. Jan. 24, 2008), reached the same conclusion, though it purported to reject *Pilon*'s and *Erickson*'s reliance on a

---

[5] The court referenced the same legislative history as *Erickson*. The Second Circuit also observed that the seal provisions served other functions not addressed in the FCA's legislative history, including to protect defendants' reputations in the event of the filing of meritless *qui tam* actions and to foster speedy settlements.

[6] The court also noted that the relators' counsel's "marginal efforts" to ensure the complaint would be filed under seal and, upon discovering it had not been filed under seal, his allowing his clients to give a detailed interview about the action shortly after it had been filed, "reveal[ed] . . . a considerable lack of good faith." *Id.* at 999. Its decision, however, did not rely on a factual finding of bad faith or willfulness.

finding that failure to comply with the statutory seal provisions frustrated the congressional goals underlying those provisions. It simply held instead that where the mandatory sealing provisions of the FCA are violated, the plaintiff loses his right to bring a statutory cause of action. *Id.* at *4 (citing *Blenstroub v. Harris Tube Pulling & Mfg., Inc.*, No. Civ-1-89-560, slip op. at 5 (E.D. Tenn. Oct. 13, 1992)).

The *Fellhoelter* court did not specifically identify whether its holding was based upon lack of subject-matter jurisdiction resulting from the procedural default. Defendant here, however, interprets the *Fellhoelter* holding as jurisdictional in nature, and urges this Court to adopt the same rationale. This Court, like *Pilon*, finds it unnecessary to reach that question.[7] Instead, the Court holds that Summers'

_____

[7] It appears that most courts to consider the question, though not all, have concluded or at least assumed that procedural requirements of § 3730(b)(2) are not jurisdictional. This Court, if it were required to make an express finding on this issue, would find persuasive the analysis employed by the Eastern District of Virginia in *United States ex rel. Ubl v. IIF Data Solutions*, No. 1:06-cv-641, 2009 WL 1254704 (E.D. Va. May 5, 2009). There, the relator filed his original complaint *in camera* and under seal. After the Government gave notice that it declined to intervene, the court ordered the complaint (and the matter as a whole) unsealed and served upon the defendants. After the defendants were served, they filed a motion to dismiss under Rule 9(b) of the Federal Rules of Civil Procedure, alleging that the allegations of fraud in the complaint were not pleaded with sufficient specificity. The court granted the motion and dismissed the complaint without prejudice, giving the relator leave to amend his complaint. The relator thereafter filed his amended complaint, this time not under seal or *in camera*. The parties then engaged in active litigation for another two years before the defendants filed their motion to dismiss for lack of subject-matter jurisdiction based upon the relator's failure to file the amended complaint under seal. The court denied the motion, finding, after a comprehensive analysis of the question, that the requirements of § 3730(b)(2) were not jurisdictional and that, under the specific circumstances presented there, the policy arguments supporting dismissal for failure to comply with the filing and service requirements were no longer applicable. Worthy of particular emphasis is the *Ubl* court's finding that "[i]f the filing and service requirements were jurisdictional prerequisites, the proper remedy for a relator's failure to comply with them—in all cases—would be dismissal of the complaint with prejudice." *Id.* at *3 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety.")). Thus, if the requirements were jurisdictional, the relator's procedural default would result in dismissal with prejudice as to the United States as well, thereby depriving the government—the real party-in-interest—of the opportunity to pursue the litigation if it so chose. *Id.* The court concluded: "Given the finality of dismissal where a court lacks subject matter jurisdiction, it seems that had Congress wished to make a court's jurisdiction contingent upon a relator's compliance with these procedural requirements, it would have done so explicitly." *Id.* (footnote omitted) (citing *Arbaugh*, 546 U.S. at 515–16). *Cf. United States ex rel. Maxfield v. Wasatch Constructors*, No. 2:99-CV-00040 PGC, 2005 U.S. Dist. LEXIS 10162, *12–*14 (D. Utah May 27, 2005) (finding that the requirement contained in 31 U.S.C. § 3730(b)(2) that the relator serve the government with a "written disclosure" statement at the start of a *qui tam* action was not jurisdictional, such that the relator's failure to comply with it was not fatal to his ability to bring the action); *Castenson v. City of Harcourt*, 86 F. Supp. 2d 866, 877–78 (N.D. Iowa 2000) (where the record did not indicate that plaintiffs had complied with § 3730(b)(2) but no party had actually raised an objection based on that deficiency, the court concluded that § 3730(b)(2) requirements were procedural preconditions rather than jurisdictional prerequisites, such that objection to them could be waived). *But see Friedman v. Fed. Dep. Ins. Corp.*, No. 93-277, 1995 U.S. Dist. LEXIS 15460, at *8 (E.D. La. Oct. 13, 1995) ("The Government argues that this *in camera* filing requirement is jurisdictional and that the intervenors' dereliction in this regard warrants dismissal. The Court agrees." (citing *Erickson v. Am. Inst. of Biological Scis.*, 716 F. Supp. 908, 911 (E.D. Va. 1989)).

failure in this case to file her complaint *in camera* and under seal is a fatal deficiency that requires dismissal of this action with prejudice as to the relator (without prejudice to the United States), both because her failure to comply with the statute deprives her of the ability to pursue the remedy created by the statute, and because the same failure incurably frustrates the underlying purposes of the procedural requirements.  This holding should not be construed as a "sanction."  As previously indicated, this Court finds that the presence or absence of bad faith on the part of the relator is simply not material.[8]  Likewise, while the United States indicates that there is a "possibility that [its] investigation will be harmed by the seal's breach" as a result of its inability now "to explore certain covert methods of investigation," there is no way to ascertain whether the United States has been "actually harmed" as the *Lujan* balancing test would have required.

This Court does not reach the question of whether the fraud allegations are pleaded with sufficient specificity, and  Summers' motion to amend her complaint will be denied as moot given that the proposed amendment would be futile.

>        D.        The Request for Attorneys' Fees

Defendant LHC seeks attorneys' fees under 31 U.S.C. § 3730(d)(4), which permits an award of attorneys' fees to a prevailing defendant if the Government opts not to proceed with the action and if "the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment."  Because the matter is subject to dismissal as a result of a procedural default rather than a substantive deficiency and there is no indication in the record as to whether the United States will choose to bring claims based on the same or related allegations, the Court has no basis for finding that the claim brought is clearly frivolous or vexatious, or brought primarily for the purposes of harassment.  LHC's request for an award of attorneys' fees will therefore be denied.

---

[8] The Court notes that counsel's purported efforts to file the matter in compliance with the statute were undoubtedly insufficient.  *Cf. United States ex rel. Le Blanc v. ITT Indus., Inc.*, 492 F. Supp. 2d 303, 306 (S.D.N.Y. 2007) (dismissing the action without prejudice as to the relator based upon the relator's failure to file his complaint under seal, and noting:  "[T]he responsibility for following the requirements of the False Claims Act falls on the party commencing the action, not on the Clerk of Court."); *United States v. Fiske*, 968 F. Supp. 1347, 1352 (E.D. Ark. 1997) (where the relator, who was a licensed attorney, claimed he had advised the clerk to file the case in accordance with the requirements of § 3730(b)(2) but the clerk had "decided" not to follow his instructions, the court noted, "It is the opinion of the Court that allowing the clerk to file a complaint in violation of clear statutory requirements because the clerk "decided" to disregard a verbal request is an unreasonable response from a licensed attorney.")

An appropriate order as to the Motion to Dismiss will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge